# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREEN ARROW LABS, INC.,

      Plaintiff,

v.

KRISTI NOEM,
*in her official capacity as Secretary,*
*U.S. Department of Homeland Security*, and
JOSEPH B. EDLOW,
*in his official capacity as Director, U.S.*
*Citizenship and Immigration Services*,

      Defendants.

CIVIL ACTION NO.  1:24-cv-00741

## MEMORANDUM OPINION AND ORDER

      Pending is Defendants Kristi Noem and Joesph B. Edlow's ("Defendants")[1] Second

Motion to Dismiss, filed September 19, 2025. [ECF 17]. On October 10, 2025, Plaintiff Green

Arrow Labs, Inc. ("Green Arrow"), responded in opposition [ECF 18], to which Defendants

replied on October 24, 2025. [ECF 19].

### I.

### A.    *Factual Background*

      Green Arrow challenges Defendants' rejection of its Form-I129 Petition for

Nonimmigrant Worker ("H-1B petition"), "submitted on behalf of its employee, Sai Salaka . . . ."

[ECF 1 at 2 ¶ 3; *Id.* at 1 ¶ 1, Exhibit 2]. Generally, the H-1B visa process ("H-1B program") allows

---

[1] On January 25, 2025, Ms. Noem replaced Alejandro Mayorkas as Secretary of the United States Department of Homeland Security. On July 18, 2025, Mr. Edlow replaced Ur Jaddou as Director of the United States Citizenship and Immigration Services. The Court thus **DIRECTS** the Clerk to substitute Ms. Noem and Mr. Edlow as Defendants in this action pursuant to *Federal Rule of Civil Procedure* 25(d).

employers to hire foreign nationals in "specialty occupations." [ECF 17 at 3]. The H-1B program adheres to a congressionally mandated cap to "manage the selection process." [*Id*. at 3-4]. Thus, to apply for an H-1B visa, an employer must first register with a random selection system ("H-1 B cap lottery") conducted by the Department of Homeland Security ("DHS"). [ECF 17 at 4]. If selected, the employer receives a Registration Selection Notice. [*Id.*]. Subsequently, the employer may file its H-1B petition. [*Id.*]. Only petitions received within the registration period are considered "timely filed." [ECF 1, Exhibit 9].

On March 18, 2024, Green Arrow registered its employee, Sai Salaka, in the 2025 H-1B cap lottery. [ECF 1 at 1 ¶ 2]. Subsequently, Sai Salaka "was selected, and [Green Arrow] received an H-1B Registration Selection Notice, dated March 27, 2024." [*Id.* at 2 ¶ 2]. The notice listed a registration period of April 1, 2024, until June 30, 2024. [ECF 17 at 8]. Three days prior to this deadline, Green Arrow filed its H-1B petition, [ECF 1 at 2 ¶ 3], which was rejected by the United States Citizen and Immigration Services ("USCIS") on July 1, 2024. [*Id.* ¶ 4; *see* ECF 1, Ex. 2] Among the ten reasons listed for the denial, [*Id.*], USCIS noted "…the petition was incomplete because it lacked the required H-1B and H-1B1 Data Collection and Filing Fee Exemption Supplement . . . ." ("Fee Exemption Supplement"). [ECF 17 at 9]. The Fee Exemption Supplement conveys information necessary for USCIS to calculate requisite fees and determine "whether the petitioner submitted the correct filing fees, as required to comply with 8 C.F.R. § 103.2(a)(7)(i) . . . ." [*Id.*].

Green Arrow asserts it resubmitted an allegedly compliant H-1B petition on July 5, 2024. The second petition contained the "correct fees and correct information," including the Fee Exemption Supplement, "which had been inadvertently omitted from its first H-1B filing by the plaintiff's former immigration attorney, Ann Roberton." [ECF 1 at 2 ¶ 5]. On July 9, 2024, the

2

second petition was rejected, stating "[y]our Form I-129 petition subject to the FY2024 cap was not properly filed during the filing period listed on your registration selection notice. Your petition was received by USCIS after the latest date you were eligible to file your petition." [*Id.* ¶ 6]. On July 18, 2024, a third H-1B petition was filed by new counsel "requesting that it be receipted and adjudicated *nunc pro tunc*. This third H-1B petition included an affidavit from Attorney Ann Robertson admitting her legal error and proof as to why USCIS should accept and process th[e] petition." [*Id*. at 3 ¶ 7]. The third petition was denied on July 25, 2024, citing the same rationale from the second rejection notice. [*Id*. ¶ 8].

### B.      *Procedural Posture*

On September 3, 2024, Green Arrow instituted this action against Defendants "for declaratory judgment, injunctive relief, and review of an agency action under the Administrative Procedure Act ('APA') based on defendants' unlawful, arbitrary, and ultra vires rejection" of its H-1B petition. [*Id*. at 1 ¶ 1]. In essence, Green Arrow asserts, considering the repeated rejections, it is "at risk of losing its opportunity to file the H-1B petition seeking authorization to employ the foreign national per the I-797C, Notice of Action, H-1B Registration Selection Notice, dated March 28, 2024." [*Id*. at 3 ¶ 11].

Green Arrow contends federal question jurisdiction exists under 28 U.S.C. § 1331 "because the plaintiff's claims arise under the laws of the United States, including 5 U.S.C. §§ 555 and 701, *et seq.* ('APA'), 8 U.S.C. § 1101, *et seq.* ('INA') (including 8 U.S.C. § 1182)." [*Id*. ¶ 13]. It asserts relief can be granted pursuant to "5 U.S.C. §§ 553, *et seq.*, and §§ 701, *et seq.*; and 28 U.S.C. §§ 2201, *et seq.* (Declaratory Judgment Act)." [*Id*.].

On November 15, 2024, Defendants moved to dismiss. [ECF 10, 11]. On September 2, 2025, our Court of Appeals decided *Romero v. Bondi*, 150 F.4th 332 (4th Cir. 2025), after the

motion matured for adjudication. The Court denied the motion without prejudice, subject to renewal with an appropriate discussion respecting the implications, if any, of *Romero* on the matter. [ECF 15]. On September 19, 2024, Defendants renewed their motion to dismiss. [ECF 17].

Defendants first contend Green Arrow has not properly alleged standing as "its alleged injuries are not traceable to the Defendants," but instead "caused by [Green Arrow's] error . . . ." [ECF 17 at 2]. Second, Defendants assert "[Green Arrow] fails to allege facts upon which relief may be granted." [*Id*.]. Finally, Defendants maintain the Fifth Amendment is not implicated, rendering *Romero* inapplicable, inasmuch as "[Green Arrow] is not involved in a proceeding, much less a proceeding with consequences akin to denial of asylum or removal on other grounds." [*Id.* at 19].

Green Arrow responds the Court has jurisdiction under Section 706 of the APA, which provides "[t]he reviewing court shall – (1) compel agency action unlawfully withheld or unreasonably delayed." [ECF 18 at 3]. Green Arrow purports, "[w]here a district court has jurisdiction under 28 U.S.C. § 1331, the case can be filed as a complaint for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, and it will be governed by the APA." [*Id*. at 5].

Regarding the standing contention, Green Arrow contends "[i]t is premature for this Court to make a factual determination that defendants are blameless for their multiple rejections of the plaintiff's H-1B petition." [*Id*. at 6]. Specifically, Green Arrow notes "[it] has not had the benefit of reviewing and citing this Court to the certified administrative record, denying it the ability to show that mistakes were made by the defendants or the contractors that they use to process and reject H-1B petitions." [*Id*. at 7] (internal citation omitted). Similarly, regarding the sufficiency of the factual allegations, Green Arrow asserts dismissal is "premature" because "the defendants' arguments here raise 'factual questions . . . .'" [*Id.*] (internal citation omitted).

Lastly, Green Arrow contends "the principles expressed in *Romero* should apply in this case" given *Romero* "recognize[s] the importance of *minimally-effective* legal counsel for non-citizens in U.S. immigration proceedings . . . ." [*Id.* at 8] (emphasis in original). In reply, Defendants reiterate *Romero* is inapposite given that Green Arrow is not involved in a deportation proceeding. [ECF 19 at 5].

**II.**

*A.* *Governing Standard*

A motion to dismiss under Rule 12(b)(1) challenges subject matter jurisdiction. This includes Article III standing challenges. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). To demonstrate Article III standing, a plaintiff must establish three elements: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Sheppheard v. Morrisey*, 143 F.4th 232, 242–243 (4th Cir. 2025) (referencing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, (2000)); *see also Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023). A "particularized" injury "affects the plaintiff in a personal and individual way." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (internal citations and quotations omitted). A "concrete" injury "is '*de facto*'" or, in other words, "it actually exist[s]." *Id.* Moreover, traceability "ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court." *Sheppheard*, 143 F.4th at 243 (4th Cir. 2025) (internal citations and quotations omitted).

5

Furthermore, "[e]ach element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Wikimedia Foundation*, 857 F.3d at 208 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561). "A defendant may challenge standing at the motion-to-dismiss stage in one of two ways: facially or factually." *Id.* (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). Where, as here, a facial challenge is made and "the defendant contends that the complaint 'fails to allege facts upon which [standing] can be based,' . . . the plaintiff 'is afforded the same procedural protection' that exists on a motion to dismiss." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Simply put, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Moreover, "[a]t the motion-to-dismiss stage, this burden is 'relatively modest.'" *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (quoting *Bennett v. Spear*, 520 U.S. 154, 171, (1997)). Yet, "[e]ven so, a plaintiff's injury is not fairly traceable to the defendant's action if the plaintiff 'independently caused his own injury.'" *Id*. (quoting *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012)).

**B.      *Applicable Statutory Framework***

The Immigration and Nationality Act ("INA") permits the classification of eligible temporary foreign workers to work in a "specialty occupation," based on a petition filed by the employer sponsoring the worker. 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c)(1). Each year, there is a 65,000 cap on these visas, and an additional 20,000 for those who have an applicable higher degree, totaling 85,000 H-1B visas that may be executed each year. *See* 8 U.S.C. § 1184(g)(1).

6

Pursuant to 8 C.F.R. § 214.2(h)(8)(iii)(A)(1), "[t]o be eligible to file a petition for a beneficiary who may be counted against the H–1B regular cap or the H–1B advanced degree exemption for a particular fiscal year, a registration must be properly submitted in accordance with 8 CFR 103.2(a)(1), paragraph (h)(8)(iii) of this section, and the form instructions, for the same fiscal year." 8 C.F.R. § 214.2(h)(8)(iii)(A)(1). Additionally, "[a]n H-1B cap-subject petition must be properly filed within the filing period indicated on the relevant selection notice. The filing period for filing the H-1B cap-subject petition will be at least 90 days. If petitioners do not meet the requirements of this paragraph (h)(8)(iii)(D), USCIS may deny or reject the H-1B cap-subject petition." 8 C.F.R. § 214.2(h)(8)(iii)(D). Moreover, "an H-1B cap-subject petition must be properly filed within the filing period indicated on the relevant selection notice . . . . If petitioners do not meet the requirements of this paragraph (h)(8)(iii)(D), USCIS may deny or reject the H-1B cap-subject petition." 8 C.F.R. § 214.2(h)(8)(iii)(D)(3).

In addition, "USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt at the location designated for filing such benefit request whether electronically or in paper format." 8 C.F.R. § 103.2(a)(7)(i). A benefit may be rejected if it is not "filed in compliance with the regulations governing the filing of the specific application, petition, form, or request" and accompanied by the appropriate fees. 8 C.F.R. § 103.2(a)(7)(iii). Pertinently, the DHS requires "[e]very form, benefit request, or other document must be submitted to DHS and executed *in accordance with the form instructions…*" 8 C.F.R. § 103.2(a)(1) (emphasis added)

### III.

Defendants move to dismiss pursuant to *Federal Rule of Civil Procedure* 12(b)(1) and (b)(6). [ECF 17]. The parties agree on the fundamental nature of the questions presented. First,

7

does Green Arrow lack standing to assert its claims because the alleged injury is not attributable to Defendants? Second, does Green Arrow fail to state a claim upon which relief can be granted because it does not sufficiently allege its H-1B petitions were improperly denied? And finally, to what extent, if at all, should the principles outlined in *Romero* apply herein? The Court begins with the standing analysis.

Defendants assert Green Arrow fails to allege an injury fairly traceable to USCIS' conduct. Specifically, they contend "the facts [Green Arrow] allege[] in the Complaint demonstrate that the denial of [its] H-1B petitions was caused by the actions of its former counsel—a third party not before the court." [ECF 17 at 12]. Regarding USCIS processing, Defendants explain the agency:

> reviews evidence at intake to determine whether the petition meets threshold criteria to receive a receipt date. Generally, that means determining that the form is executed, signed, has the proper fee(s), and includes certain required initial evidence. Benefit requests that are not properly filed are rejected. USCIS rejected Green Arrow's H-1B petition on July 1, 2024, for a number of reasons, including that the petition was incomplete because it lacked the required H-1B and H-1B1 Data Collection and Filing Fee Exemption Supplement ("Fee Exemption Supplement").

[*Id*. at 8].

After rejection, Green Arrow filed a subsequent H-1B petition on July 5, 2024. This application was denied due to its untimely submission inasmuch as it was filed after the deadline by which Green Arrow was "eligible to file a petition[.]" [*Id*.]. On July 18, 2024, Green Arrow, notably with new counsel, filed its third petition. [*Id*.]. USCIS rejected it on the same basis. [*Id*.].

Assuming the facts alleged in the complaint are true, Green Arrow misses the requisite marks. Foremost, the USCIS rejections complied with the applicable regulations, namely 8 C.F.R. § 103.2(a)(1), 8 C.F.R. § 103.2(a)(7)(iii), and 8 C.F.R. § 214.2(h)(8)(iii)(D)(3).

First, 8 C.F.R. § 103.2(a)(1) provides "[e]very form, benefit request, or other document must be submitted to DHS and executed in accordance with the form instructions." 8 C.F.R. § 103.2(a)(1). This encompasses H-1B petitions, such as Green Arrow's filing. Moreover, the instructions state "petitioners must complete the H-1B Data Collection and Filing Fee Exemption Supplement, which is part of this petition." [ECF 17 at 9]. Second, the governing regulations clearly provide "[e]ach form, benefit request, or other document must be filed with the fee(s) required by regulation . . . . Except as otherwise provided in this chapter I, fees must be paid when the request is filed or submitted." 8 C.F.R. § 103.2(a)(2). Third, the code explicitly represents as follows:

> (ii) A benefit request which is rejected will not retain a filing date. A benefit request *will be rejected if it is not*:
>
> . . . . .
>
> (C) *Filed in compliance with the regulations governing the filing of the specific application petition, form, or request*; and
>
> (D) Submitted with the correct fee(s). *Every form, benefit request, or other document that requires a fee payment must be submitted with the correct fee(s)*.
>> (1) If USCIS accepts a benefit request and determines later that the request was not accompanied by the correct fee, USCIS may reject or deny the request. If the benefit request was approved when USCIS determines the correct fee was not paid, the approval may be revoked upon notice.
>
> . . . . .
>
> (iii) A rejection of a filing with USCIS may not be appealed.

8 C.F.R. § 103.2(a)(7)(ii-iii) (emphasis added).

At bottom, these regulations unequivocally vest USCIS with the discretion to deny the application when the form is submitted incorrectly, without the mandated fees or in violation of the form instructions. 8 C.F.R. § 103.2(a)(7)(ii)(D). Green Arrow admits to omission of the Fee

9

Exemption Supplement. [ECF 1 at 2 ¶ 5]. The form instructions explicitly require submission of the Fee Exemption Supplement [ECF 17 at 9], and Green Arrow submitted its initial H-1B petition without it. Moreover, it appears the Fee Exemption Supplement contains the information necessary to determine whether the correct fees have been submitted. [*Id.*] Without the Fee Exemption Supplement in the initial H-1B petition, Green Arrow effectively stripped USCIS of the tools necessary to assess any submitted fees.

Nevertheless, Green Arrow contends "[D]efendants' argument is based on the allegations in . . . [its] [C]omplaint and not upon a factual record" and, as such, "[i]t is premature for this Court to make a factual determination that [D]efendants are blameless for their multiple rejections of . . . [its] H-1B petition." [ECF 18 at 6]. Again, Green Arrow seeks "declaratory judgment, injunctive relief, and review of an agency action under the [APA]" for the allegedly "unlawful, arbitrary, and *ultra vires* rejection" of its H-1B petition by the Defendants. [ECF 1 at 1 ¶ 1]. Yet, as Green Arrow itself acknowledges, the facts provide the original H-1B petition was incomplete, and the subsequent petitions were submitted past the applicable deadline. While Green Arrow urges dismissal would be "premature," there is no indication USCIS operated outside of its discretion in denying the H-1B petition, which was admittedly filed without the Fee Exemption Supplement. [ECF 1 at 2 ¶ 5] The facts presented by Green Arrow, even when taken as true, decisively point to a lack of standing.

Nonetheless, Green Arrow asserts the Court must consider *Lozada*, contending the decision obligates USCIS to accept untimely filings. [ECF 1 at 25-29; *see Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988)]. This assertion is misplaced. In *Lozada*, the Board of Immigration Appeals ("BIA") prescribed parameters for ineffective assistance of counsel claims as they pertain to motions to reopen deportation proceedings. *See Lozada*, 19 I & N Dec. 637 at 639-40. In

10

essence, "[t]he goal of *Lozada* was to provide a more objective basis from which to assess the veracity of the substantial number of ineffective assistance claims asserted by asylum applicants and to hold attorneys to appropriate standards of performance." *Tamang v. Holder*, 598 F.3d 1083, 1090 (9th Cir. 2010). Pursuant to *Lozada*, a petitioner should: "(1) provide an affidavit describing [their] agreement with counsel, (2) inform counsel of the allegations and permit counsel an opportunity to respond, and (3) indicate whether a complaint [was] filed with the appropriate disciplinary authorities, and if not, explain why not." *Adeaga v. Holder*, 548 F. App'x 68, 69 (4th Cir. 2013) (referencing *Lozada*, 19 I. & N. Dec. 637, 639)).

Defendants respond "[n]o court in the Fourth Circuit has applied *Lozada* in the H-1B context, and the Fourth Circuit's treatment of *Lozada* in other contexts indicates that USCIS was not bound to accept [Green Arrow's] untimely H-1B petitions merely because [Green Arrow's] former counsel's error caused [it] to miss the deadline." [*Id*. at 15]. The Court agrees. Our Court of Appeals has seldom applied *Lozada* and, when it has, it is generally in the context of reviewing an appeal of a BIA decision, not denials of H-1B petitions. *See Veliz-Saenz v. Bondi*, No. 24-1280, 2025 WL 1303951, at *1 (4th Cir. May 6, 2025) (denying review of an ineffective assistance of counsel claim in the asylum context where "such claim must first be presented to the Board in a motion to reopen."); *see also Xing Yang Yang v. Holder*, 770 F.3d 294, 299 n.6 (4th Cir. 2014) (providing the appellate court lacked jurisdiction of a claim not previously raised in the BIA). *Lozada* is thus inapposite.

Moreover, *Romero* likewise offers Green Arrow no relief. *See Romero v. Bondi*, 150 F.4th 332 (4th Cir. 2025). In *Romero*, our Court of Appeals was tasked with determining "whether a noncitizen's Fifth Amendment right to a fundamentally fair *removal proceeding* can be violated by the ineffective assistance of counsel." *Id*. at 339 (emphasis added). The Court

11

ultimately concluded "for noncitizens who manage to retain an attorney, the right to a fundamentally fair proceeding can be violated by ineffective assistance of counsel[.]" *Id*. at 339-40. In reaching this conclusion, the Court emphasized (1) the substantial reliance noncitizen's place on their counsel's advice in removal proceedings given "[t]he proliferation of immigration laws and regulations[,]" which have "aptly been called a labyrinth that only a lawyer could navigate[,]" and (2) the dire consequences resulting from deficient counsel in such proceedings, the most significant being "the deportation of an otherwise asylum-eligible citizen." *Id*. at 340. Indeed, the Court went so far as to characterize removal proceedings as "death penalty cases in a traffic court setting." *Id.* at 341 (internal citation and quotation omitted).

The H-1B application process at issue here cannot properly be analogized with a deportation proceeding and the significant consequences resulting from the ineffective assistance of counsel therein. Simply put, inasmuch as this matter does not involve a removal proceeding implicating due process concerns, *Romero* is inapposite.

In sum, the only conduct traceable to Defendants is their permissible denial of Green Arrow's facially inadequate petition. Consequently, Green Arrow is unable to establish standing. The dispute thus falls outside the scope of a case or controversy under Article III.

**IV.**

Based upon the foregoing discussion, the Court **GRANTS** Defendants' Motion to Dismiss [**ECF 17**], **DISMISSES WITHOUT PREJUDICE** Green Arrow's Complaint [**ECF 1**], and **DISMISSES** the matter.

12

The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: March 23, 2026

Frank W. Volk
Chief United States District Judge